**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 91-8218

_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

          VERSUS

     ALBERTO ROJAS-MARTINEZ and
       OLAVO MICHEL, JR.,

                              Defendants-Appellants.

_____

No. 91-8298

_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

          VERSUS

   JOSE CARRILLO-RUIZ, MARTIN CASAS-ACEVEDO,
   EFRAIN GONZALEZ-TORRES, ROBERTO HERRERA,
 MIGUEL HERRERA, and ALFREDO REYES-MARENTES,

                              Defendants-Appellants,


_____

Appeals from the United States District Court
     for the Western District of Texas
_____

(July 29, 1992)

Before WISDOM, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

The six defendants in No. 91-8298[1] and the two defendants in No. 91-8218[2] were arrested after they were discovered illegally crossing the United States-Mexico border. After placing the defendants in custody, border patrol agents returned to the area where they had seen the defendants and traced the defendants' path to bags containing over 300 pounds of marihuana. The defendants in No. 91-8298 confessed to border patrol agents that they had been hired by the defendants in No. 91-8218 to transport the marihuana across the border; the six then repeated their confessions to special customs agents.

II.

The two groups were tried separately. All eight defendants were convicted of (1) conspiracy to import more than 100 kilograms of marihuana, in violation of 21 U.S.C. § 963; (2) importation of more than 100 kilograms of marihuana, in violation of id. § 952(a); (3) conspiracy to possess with intent to distribute more than 100 kilograms of marihuana, in violation of id. § 846; and (4) possession with intent to distribute more than 100 kilograms of marihuana, in violation of id. § 841(a)(1). Various defendants in No. 91-8298 appeal the admission of their confessions, the failure to sever Carrillo, and the constitutionality of sentencing. The

_____

[1] Jose Carrillo-Ruiz (Carrillo), Martin Casas-Acevedo (Casas), Efrain Gonzalez-Torres (Gonzalez), Roberto Herrera (R. Herrera), Miguel Herrera (M. Herrera), and Alfredo Reyes-Martinez (Reyes).

[2] Alberto Rojas-Martinez (Rojas) and Olavo Michel, Jr. (Michel).

2

defendants in No. 91-8218 challenge the sufficiency of the evidence and the increase in their sentence for their role as organizers. We affirm.

### III. No. 91-8298.

#### A. Voluntariness of Confessions

The defendants[3] attempted to suppress the confessions made on the night of their arrest, arguing four factors as demonstrating that the confessions were involuntary and coerced: (1) the physical conditions of their confinement; (2) the deception and psychological coercion used by the questioners; (3) the failure to advise them of their rights; and (4) the delay in presenting them to a magistrate after detention. The government has the burden of proving by a preponderance of the evidence that each defendant voluntarily waived his rights and that the statements he made were voluntary. Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).

Voluntariness depends upon the totality of the circumstances and must be evaluated on a case-by-case basis. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Under Connelly, a confession is voluntary in the absence of official overreaching, in the form either of direct coercion or subtle forms of psychological persuasion. United States v. Raymer, 876 F.2d 383, 386-87 (5th Cir.), cert. denied, 493 U.S. 870 (1989). We treat the district court's findings of fact as valid unless clearly erroneous but make

---

[3] Casas, Gonzalez, R. Herrera, M. Herrera, and Reyes moved to suppress; Carrillo did not move to suppress and does not participate in this issue on appeal.

3

an independent review of the legal conclusion of voluntariness. Raymer, id. at 386.

Defendants complain that they were wet, cold, and fatigued at the time of the interrogation. They argue that they were misled by the sympathetic plain-clothes officer and frightened by the uniformed officer. These circumstances do not demonstrate official coercion. The defendants were apprehended after 10:30 p.m. and arrived at the border patrol station at approximately 11:30 p.m. When a suspect is apprehended in a criminal act late at night, the government is not required to wait until morning to perform police processing and investigation.

Expressions of sympathy by an officer are not coercive. See Hawkins v. Lynaugh, 844 F.2d 1132, 1139 (5th Cir.) (distinguishing between permissible expressions of sympathy and impermissible promises of leniency), cert. denied, 488 U.S. 900 (1988). An officer does not overreach by conducting an interview in full uniform, including a service revolver, unless he threatens the defendant. The district court found that the defendants were not threatened, and we uphold this finding as not clearly erroneous.

Defendants also allege that the officers implicitly promised that they could return to Mexico if they confessed. The district court found that no promises were made, and this conclusion is not clearly erroneous in light of the evidence. After bringing them in, the agents had each defendant sign an I-274 form, a voluntary release for return to Mexico. The agents followed this procedure for all undocumented aliens.

4

Moreover, at that time, the government had found no drugs, and it was likely that the defendants would be sent back to Mexico. The officers made no statements to the defendants that could be construed as a promise, and the fact that the defendants who had already been questioned were taken to a location different from that to which the ones who had not been questioned were taken does not give rise to an inference that the officers were trying to make the defendants believe they would be released if they confessed.

Finally, defendants allege that the length of time between detention and arraignment indicates that their confessions were involuntary. Because defendants first confessed within six hours of the arrest, the delay in arraignment does not render the confessions automatically invalid. See 18 U.S.C. § 3501(c). "Once a defendant has been tried and convicted, delay in bringing him before a magistrate is not reason to set aside the conviction unless the defendant can show that he was prejudiced by the delay." United States v. Bustamante-Saenz, 894 F.2d 114, 120 (5th Cir. 1990). Since the delay in this case occurred after the confessions, it could not have affected the voluntariness thereof.

The overall circumstances of the interrogations were not coercive. The defendants were held in a cell, and later in a heated vehicle, together. The agents testified that the defendants would have been allowed cigarettes or water during the

5

interrogation.[4]  Defendants were advised of their <u>Miranda</u>[5] rights in Spanish and voluntarily waived them.[6]  Each interrogation lasted less than thirty-five minutes, and each defendant confessed within that time.  The fact that the agents ceased to question the defendants in No. 91-8218 after they invoked their <u>Miranda</u> rights supports the court's finding that there was no coercion.

Defendants' challenge to admission of the second set of confessions depends upon a finding that the first set was involuntary.  Since we conclude that the original confessions were voluntary, we also affirm the admission of the second set of confessions.


## B.  Severance.

Defendants appeal the court's denial of their motion to sever

---

[4] The agents asked one defendant whether he was cold and offered him a cigarette and gave water to another who requested it.

[5] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[6] Although defendants assert that they were not advised of their rights, the district court found that they were advised, understood their rights, and voluntarily waived them:

> In the instant case, each of the five Movants signed two separate acknowledgements that he had been informed of his constitutional rights and that he waived them and agreed to speak with the agents. Furthermore, the Court finds from the evidence that the statements made by each man were voluntary, and that they were not induced by improper promises or threats.  Although one of the Movants, Miguel Herrera, took the witness stand at the hearing on his motion to suppress and testified to the contrary, it is the Court's task to evaluate the testimony and to judge their credibility.  After hearing all the evidence, the Court has found the facts adversely to the Movants.

These findings are not clearly erroneous.

6

their trial from Carrillo's.[7] Codefendants are entitled to severance when they demonstrate defenses that are antagonistic. United States v. Hernandez, 842 F.2d 82, 86 (5th Cir. 1988). Defenses are antagonistic if they are mutually exclusive or irreconcilable, that is, if the core of one defendant's defense is contradicted by that of a codefendant. United States v. Rocha, 916 F.2d 219, 231 (5th Cir. 1990), cert. denied, 111 S. Ct. 2057 (1991). We review the denial of a motion to sever for abuse of discretion. Id. at 227.

Carrillo's defense did not contradict that of the other defendants. All the defendants argued that the evidence against them was insufficient to convince the jury beyond a reasonable doubt. During closing argument, Carrillo's lawyer argued that the government had not proved beyond a reasonable doubt that Carrillo had committed the crimes charged. He then argued, in the alternative, that if the jury found that Carrillo had transported the marihuana, he should be held responsible only for the amount he carried individually. Carrillo did not testify, and the jury was not instructed on lesser included offenses.

A statement that Carrillo was not guilty and, if guilty at all, not guilty of the crime as charged, does not exclude the other defendants' claims that they were innocent. The court did not abuse its discretion.

_____

[7] Casas, Gonzalez, R. Herrera, and M. Herrera moved for severance; Reyes and Carrillo did not move to sever and do not participate in this issue on appeal.

C.   Sentencing.

Carrillo received the minimum mandatory sentence under 21 U.S.C. § 841(1)(B)(vii).[8]  He argues that he has been denied his constitutional guarantees of due process and equal protection by the court's inability to depart downward from his minimum mandatory sentence.  We find no constitutional violation.

Carrillo argues that while Congress's stated goal is to punish major traffickers more severely than minor ones, the interaction of the sentencing guidelines and mandatory minimums produces the opposite result.  The Anti-Drug Abuse Act of 1986 requires a minimum sentence of five years without parole for any conviction involving 100 kilograms or more of marihuana.  Carrillo points out that the only basis for departure below the mandatory minimum is substantial assistance to the government.  See 18 U.S.C. § 3553(e). Since couriers like Carrillo do not have access to information, he argues that this system of departures provides kingpins, but not couriers, with a means of avoiding the mandatory minimums.

Carrillo's due process and equal protection claims are without merit.

> [A] person who has been . . . convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.  In this context, an argument based on equal protection essentially duplicates an argument based on due process.

---

[8] Like his codefendants, Carrillo was sentenced to 60 months' imprisonment, four years' supervised release, and a special assessment of $200.  Only Carrillo challenges his sentence on appeal.

8

<u>Chapman v. United States</u>, 111 S. Ct. 1919, 1927 (1991) (citations omitted);  <u>see also</u> <u>Nebbia v. New York</u>, 291 U.S. 502, 537 (1934) (due process not violated where statute bears a "reasonable relation to a proper legislative purpose" and is "neither arbitrary nor discriminatory").

The statutory scheme of mandatory minimum sentences obviously does not discriminate on the basis of a suspect classification. Imposition of mandatory minimum sentences for offenses involving large quantities of illegal drugs bears a rational relationship to the legitimate purpose of enforcing federal drug laws and is not arbitrary.[9]

Two circuits have rejected the contention that section 3553(e) denies equal protection to minor participants in drug offenses.[10] We agree that section 3553(e) is rationally related to the legitimate purpose of obtaining valuable information from drug criminals.  It does not discriminate against a suspect class, nor is it arbitrary.  Congress has created mandatory minimum sentences and downward departures to achieve different goals, and the means it has chosen bear a rational relationship to those goals.  We therefore affirm Carrillo's sentence.

---

[9] <u>See</u> <u>Chapman</u>, 111 S. Ct. 1927-28;  <u>United States v. Klein</u>, 860 F.2d 1489, 1500-01 (9th Cir. 1988);  <u>United States v. Holmes</u>, 838 F.2d 1175, 1177-78 (11th Cir.), <u>cert. denied</u>, 486 U.S. 1058 (1988).

[10] <u>See</u> <u>United States v. Musser</u>, 856 F.2d 1484, 1486-87 (11th Cir. 1988), <u>cert. denied</u>, 489 U.S. 1022 (1989);  <u>United States v. Broxton</u>, 926 F.2d 1180, 1183-84 (D.C. Cir. 1991) (per curiam).

IV.   No. 91-8218.

A.   Sufficiency of the Evidence.

Michel and Rojas challenge the sufficiency of the evidence. We review a claim of insufficiency to determine whether a rational trier of fact could have found each of the substantial elements beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942). We view all facts and credibility choices in the light most favorable to the verdict. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), aff'd on other grounds, 462 U.S. 356 (1983).[11]   Although the evidence against the defendants is circumstantial, a rational jury could have found them guilty beyond a reasonable doubt.

Defendants were found guilty of possession of marihuana with intent to distribute, importation of marihuana, and conspiracy to commit these two offenses. Possession with intent to distribute requires proof that the defendant had knowing possession of marihuana with the intent to distribute it. E.g., United States v. Martinez-Mercado, 888 F.2d 1484, 1491 (5th Cir. 1989). Importation additionally requires proof that the defendants played a role in bringing the marihuana from a foreign country. United States v. Hernandez-Palacios, 838 F.2d 1346, 1349 (5th Cir. 1988).

---

[11] Defendants argue that Bell is not binding precedent because it was decided by Unit B of the Fifth Circuit, en banc. Consistently, however, we have treated Unit B cases as precedential. See, e.g., United States v. Shaid, 937 F.2d 228, 230-31 (5th Cir. 1991) (en banc) (citing United States v. Adamson, 700 F.2d 953 (5th Cir. Unit B) (en banc), cert. denied, 464 U.S. 833 (1983)), cert. denied, 112 S. Ct. 978 (1992)); United States v. Hall, 845 F.2d 1281, 1283 (5th Cir.) (citing Bell), cert. denied, 488 U.S. 860 (1988). We now squarely hold that all Unit B cases are precedent in the Fifth Circuit.

10

In the instant case, after a sensor indicated an illegal border crossing, border patrol agents began a search. A group of eight or ten people was spotted, and they appeared to be carrying something. Several pieces of evidence indicated that this was the only group of people crossing the border near this location on that night.[12] Shortly after the agents saw the group, they began to run. The agents pursued the defendants, who were apprehended. The defendants had red marks on their upper bodies, as if they had been carrying something.

After observing the sneaker treads of defendants' shoes, the agents searched the field in which the defendants were apprehended. Tracing the sneaker prints, the agents discovered over 300 pounds of marihuana in eleven bags, some of which had straps. An additional bundle of matching shoulder straps was found the next day. The agents also traced the tracks to the place where the group originally was spotted. From this evidence, a rational jury could have concluded that defendants knowingly possessed the marihuana and carried it across the border. Defendants' arguments to the contrary all contest the credibility or weight of the evidence, which we construe in the light most favorable to the verdict.

Rojas specifically contends that the evidence was insufficient for the jury to conclude that he realized he was carrying

---

[12] Agent Holland testified that there was only one group of people in the vicinity. There was very little foot traffic in this area, and investigation revealed that there was only one set of sneaker tracks in the area. The agents' tracks could be distinguished because they wore boots. Since the area was muddy, footprints were easily observed.

marihuana.  A reasonable jury could have concluded that a man traveling on foot from Mexico, on a rainy night, carrying heavy bags containing a uniquely odorous substance, traveling with other persons also carrying smelly luggage, who abandoned his bag near the bags of the other travelers and then attempted to evade border patrol agents, knew that he was carrying marihuana.

The defendants also argue that there was insufficient evidence to convict them of conspiracy.  The government must prove the existence of a conspiracy and that the defendants knowingly and voluntarily joined it.  E.g., United States v. Garcia, 917 F.2d 1370, 1376 (5th Cir. 1990).  The government need not prove the existence of a formal agreement but must prove beyond a reasonable doubt that "two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan."  United States v. Williams-Hendricks, 805 F.2d 496, 502 (5th Cir. 1986) (citation omitted).  The elements of conspiracy may be proved by circumstantial evidence alone. United States v. Espinoza-Seanez, 862 F.2d 526, 537 (5th Cir. 1988).

A conspiratorial agreement may be inferred from concert of action, id., which the evidence in this case demonstrates.  The agents found only one group of tracks, and the eight people fled at the same time and were apprehended in close proximity to each other.  The jury could conclude they were traveling together.  From the evidence relating to the footprints and strap marks, the jury also could conclude that all crossed the border carrying marihuana.

12

The bags containing marihuana were found close together, indicating that the eight men disposed of the bags together. A reasonable jury could have concluded from these facts that the defendants conspired to possess and import the marihuana.

## B. Sentencing Enhancement.

At sentencing the district court decided that Rojas and Michel should be punished for their leadership role in the conspiracy and assigned a two-level upward adjustment under U.S.S.G. § 3B1.1(c). The court based its finding of a leadership role[13] on the confessions of the defendants in No. 91-8298. These confessions were inadmissible in the trial of Rojas and Michel under Bruton v. United States, 391 U.S. 123 (1968). The defendants argue that the confessions similarly were inadmissible at the sentencing hearing or, alternatively, that they were not reliable evidence.

Evidence that is inadmissible at trial may be considered in a sentencing hearing. United States v. Singleton, 946 F.2d 23 (5th Cir. 1991), cert. denied, 112 S. Ct. 1231 (1992). A court may rely upon uncorroborated hearsay at sentencing, Rodriguez, 897 F.2d at 1328, but the court in this case did not need to rely upon a single piece of uncorroborated hearsay. The confessions of the six defendants in No. 91-9298 corroborated each other. Additionally, Rojas and Michel rested separately from the other group of

---

[13] Defendants complain that the court did not make specific fact-findings in support of its conclusion that defendants acted as "managers and organizers . . . [and] supervisors." A court is not required to make particularized findings under U.S.S.G. § 3B1.1, where the defendant has not supplied specific rebuttal evidence. United States v. Rodriguez, 897 F.2d 1324, 1327-28 (5th Cir.), cert. denied, 111 S. Ct. 158 (1990).

13

defendants in the holding cell, dressed differently from the other group, and responded differently to police questioning. The court's reliance upon the confessions was not an abuse of discretion, and its finding that Rojas and Michel were organizers was not clearly erroneous in light of all the evidence presented at the two trials.

AFFIRMED.