**DYNALANTIC CORP., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE, United States Department of the Navy and United States Small Business Administration, Defendants.**

Civil Action No. 95–2301.

United States District Court,
Dist. of Columbia.

May 20, 1996.

Michael Janik, Alexander Brittin, Daniel Johnson, McKenna & Cuneo, L.L.P., Washington, D.C., for Plaintiff.

Deval L. Patrick, Isabelle Katz Pinzler, Richard S. Ugelow, Jay Adelstein, Michael A. Zubrensky, U.S. Department of Justice, Civil Rights Division, Washington, D.C., Eric H. Holder, Jr., United States Attorney for D.C., Daniel Van Horn, Office of the United States Attorney, Washington, D.C., for Defendants.

James E. Anklam, Gregory Katsas, Eric Grant, Jones, Day, Reavis & Pogue, Washington, D.C., Amici curiae for the U.S. Representatives of Congress.

William C. McNeil III, Julian A. Gross, The Employment Law Center, A Project of the Legal Aid Society of San Francisco, San Francisco, CA, Amici curiae for the Employment Center.

Paralee White, Andrew Mohr, Cohen & White, Washington, D.C., Amici curiae for the Coalition for Contracting Equity.

Pamela J. Mazza, Andrew P. Hallowell, Antonio R. Franco, Piliero, Mazza & Pargament, Washington, D.C., Amici curiae for the Minority Business Summit Volunteer Committee.

Eric R. Jones, Theodore M. Shaw, Norman J. Chachkin, David T. Goldberg, Paul K. Sonn, NAACP, Legal Defense and Educational Fund, Inc., New York, NY.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

### I. Introduction

On December 15, 1995, Dynalantic, Inc. ("Dynalantic" or "plaintiff") commenced the present action against the Department of Defense, the Department of the Navy, and the Small Business Administration ("SBA") [hereinafter referred to aggregately as "defendants"], seeking declaratory relief and an injunction to restrain defendants from limiting their solicitation of bids for procurement of at least one helicopter training simulator to firms certified under the SBA's Section 8(a) program [hereinafter referred to as "the 8(a) program"]. Dynalantic challenges the constitutionality of relevant provisions of the Small Business Act and the implementing regulations that relate to the 8(a) program, as well as 10 U.S.C. § 2323(a), (e) and the corresponding regulations.[1] Plaintiff contends that the statutes and regulations violate the Fifth Amendment of the United States Constitution, as applied to the procurement at issue in this case. Further, plaintiff claims that the defendants' decision to restrict bids and to limit competition for the helicopter simulator contract to 8(a) participants violates the Administrative Procedure Act as well as its civil rights under 42 U.S.C. §§ 1981 and 2000d.

Presently before the Court is plaintiff's motion for a preliminary injunction. Upon consideration of the pleadings, the applicable law, oral arguments of counsel, and the record herein, plaintiff's motion is **DENIED** for the following reasons.

### II. Factual Background

Plaintiff is engaged in the business of providing training equipment to the military. Although plaintiff qualifies as a "small business" as that term is defined by the SBA, 15 U.S.C. § 631 *et seq.*, it has neither applied, nor otherwise been certified, to participate in the 8(a) program.

Defendant, the Department of the Navy ("the Navy"), is seeking to procure one mobile flight simulator, referred to as the UH–1N Aircrew Procedures Trainer ("APT"), with an option for a second under a contract that is not to exceed $8 million. The Navy and defendant, SBA, have agreed that the APT procurement shall be opened only for competition to firms participating in the 8(a) program. Bids for the APT contract must be submitted by May 21, 1996.[2]

### III. SBA's Section 8(a) Program

Under the 8(a) program, the SBA may award government procurement contracts to "socially and economically disadvantaged small business concerns." 15 U.S.C. § 637(a). A small business seeking admission into the 8(a) program must be certified by the SBA as being at least 51 per cent

---

1. Plaintiff collectively refers to these two independent statutes and corresponding regulations as the "DoD set-aside scheme." Plaintiff's Memorandum in Support of Its Motion for a Preliminary Injunction [hereinafter Plaintiff's Memorandum in Support] at 9 n. 6. The 8(a) program, which Dynalantic has focused upon more extensively than 10 U.S.C. § 2323, will be discussed, *infra,* in more detail.

2. Initially, bids for the APT contract were required to be submitted on April 12, 1996. Subsequently, the submission date was extended until May 15, 1996. In a filing dated April 29, 1996, plaintiff informed the Court that the submission date had been further extended until July 16, 1996. However, at a hearing held on May 2, 1996, defendants' counsel informed the Court that the submission date has been advanced to May 21, 1996.

owned and controlled by one or more individuals that satisfy the criteria for social and economic disadvantaged status. 15 U.S.C. § 637(4)(A). A business is considered small if it is independently owned and operated, not dominant in its field of operation, and satisfies certain standards in terms of number of employees and gross receipts for its particular industry. 15 U.S.C. § 632(a)(1)–(2). Further, a person is considered "socially disadvantaged" for purposes of the 8(a) program if that individual has been "subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group." 15 U.S.C. § 637(a)(5); 13 C.F.R. § 124.105(a). Economically disadvantaged individuals are defined as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. § 637(a)(6)(A).

The 8(a) program's regulations, which implement the race-neutral language of the statute, accord members of certain racial groups with a presumption of social disadvantage. 13 C.F.R. § 124.105(b). This presumption, however, is rebuttable. *Id.* Members of racial groups that are not presumptively socially disadvantaged may establish their social disadvantage by presenting clear and convincing evidence. 13 C.F.R. § 124.105(c). Regardless of the manner in which an applicant may demonstrate his or her social disadvantage, the 8(a) program's economic disadvantage criteria excludes from entry into the program *any* individual whose net worth exceeds $250,000. 13 C.F.R. § 124.106(a)(2)(i).

A business that is certified for entry into the 8(a) program may participate in the program for a maximum period of nine years. 15 U.S.C. § 636(j)(10)(C); 13 C.F.R. § 124.110(a). However, a participant in the 8(a) program may be graduated from the program before the expiry of nine years if the business substantially achieves the goals set forth in its business plan. 13 C.F.R. § 124.208(a). Further, any individual will be deemed ineligible for continued participation in the program if that individual's personal net worth exceeds $750,000. 13 C.F.R. § 124.111(a)(2)(ii).

### IV. Plaintiff Lacks Standing To Challenge the Constitutionality of the Section 8(a) Program

It is a fundamental tenet of federal jurisdiction that "federal courts are under an independent obligation to examine their own jurisdiction" irrespective of whether any party raises a concern about a court's jurisdiction to resolve a case on the merits. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990). The doctrine of standing serves "to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990). Since standing implicates the very core of a federal court's power to consider the merits of a case, "standing can be raised at any point in a case proceeding and, as a jurisdictional matter, may be raised, *sua sponte*, by the court." *Steffan v. Perry*, 41 F.3d 677, 697 n. 20 (D.C.Cir.1994) (*en banc*).

For purposes of the case-or-controversy requirement of Article III, "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). For jurisdictional purposes, a plaintiff must demonstrate: (1) an "injury in fact," which is an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *id.* (citations, footnote and internal quotation marks omitted); (2) a causal relationship between the injury and the challenged conduct, *id.;* and (3) that it is likely, as opposed to speculative, "that the injury will be redressed by a favorable decision." *Id.*[3]

---

**3.** Dynalantic claims that it has been injured as a direct consequence of the allegedly unconstitutional 8(a) program. Thus, the Court need not consider whether Dynalantic may have demonstrated standing under a "prudential standing" analysis. Assuming that Dynalantic claimed that it had demonstrated prudential standing, the Court would not be inclined to agree. The District of Columbia Circuit, sitting *en banc,* has noted that in cases addressing difficult constitu-

■ Plaintiff has alleged that the 8(a) program and 10 U.S.C. § 2323(a), (e) (and the corresponding regulations) are "intersecting laws ... [that] create a requirement-in-fact, not susceptible of waiver, consideration of merit, or determination of merit." Plaintiff's Memorandum in Support at 8. As stated previously, plaintiff maintains that these "intersecting laws" are unconstitutional as applied to the APT procurement. Nevertheless, notwithstanding plaintiff's characterization of the statutory basis upon which defendants have relied in limiting bids to 8(a) participants, plaintiff's standing to challenge the procurement here depends upon its standing to challenge the constitutionality of the 8(a) program as applied to the APT procurement.[4] Plaintiff has conceded the marginal relevance of 10 U.S.C. § 2323 in stating the following:

> "[T]he issue whether Defendants set aside the contract under § 2323 or solely under the 8(a) program is, for purposes of this Motion, really a red herring. This is true because all agree that the APT procurement is set-aside for minority-owned 8(a) contractors to help achieve DoD's five percent goal, and no one has disputed the Navy's practice of setting aside every possible contract. Regardless of the precise statutory framework which the Defendants followed, therefore, Dynalantic is excluded from the APT competition because of the race of Dynalantic's owners."

Plaintiff's Reply to the NAACP Legal Defense and Educational Fund's Brief at 3–4 [hereinafter, Plaintiff's Reply to the LDF's Brief]. Since plaintiff lacks standing to challenge the constitutionality of the 8(a) program as applied to the APT procurement, it also lacks standing to challenge the constitutionality of 10 U.S.C. § 2323 which— as applied here—merely provides that the Defense Department may utilize the 8(a) program in seeking to achieve its goal for contracting with socially and economically disadvantaged businesses.

In its written submissions and oral presentation, Dynalantic repeatedly claims that the 8(a) program is a "race-based" program that excludes Dynalantic from competing for the APT procurement solely on the basis of race.[5] Plaintiff further maintains that as race is allegedly the "litmus test" under the 8(a) program, any non-minority company— even a non-minority-owned Fortune 500 company—has standing to attack the 8(a) program. See Transcript of Preliminary Injunction Motion Hearing, April 18, 1996 at 11. Plaintiff's argument is not limited to attacking the presumption of social disadvantage that certain racial groups are accorded under the 8(a) program; Dynalantic claims that it is precluded from even applying to the 8(a) program.

> "[Q]ualifying under the 8(a) program's economic disadvantage test is not relevant to standing. Moreover, it is difficult to answer the question posed without first applying for admission to the 8(a) program, which Plaintiff cannot do."

Plaintiff's Reply to Defendants' Supplemental Brief at 8 n. 3. Plaintiff's assertion that it

---

tional issues, it is the well-settled policy of a court to avoid, rather than to raise and address on the merits, a constitutional challenge. *Steffan v. Perry*, 41 F.3d 677, 698 (D.C.Cir.1994) (*en banc*). *See also, United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1962) (a federal court should never "anticipate a question of constitutional law in advance of the necessity of deciding it ... [nor] formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.").

4. Both during oral argument and in supplemental briefs specifically addressing plaintiff's standing to bring this suit, all parties focused exclusively upon plaintiff's standing to challenge the constitutionality of the 8(a) program as applied to the APT procurement.

5. *See, e.g.*, Plaintiff's Memorandum in Support at 11 ("The DoD set-aside scheme accords at least two privileges based on race: 1) a minimum quota for minority contractor participation; and, 2) the right to exclude non-minority competition for DoD procurement dollars. Under this preference scheme, firms owned and controlled by members of certain racial or ethnic groups are presumed to be 'socially disadvantaged' and therefore can obtain DoD contracts (including Navy contracts) without full and open competition, shutting out firms like Dynalantic."); *id.* at 13 ("The Navy's decision to award the APT contract based on a racial preference therefore prevents Dynalantic from bidding on this contract...."); *id.* at 28 ("[R]ace is the litmus test for eligibility for a DoD set-aside.... Thus, race is the primary factor considered under the DoD set-aside scheme.").

is precluded from even applying to the 8(a) program strikes the Court as rather disingenuous.[6] For purposes of determining standing, plaintiff's characterization of the 8(a) program and its efforts to elide addressing whether it satisfies the race-neutral economic criteria, do not withstand scrutiny.

The Fifth Circuit is the only federal appellate court squarely to address the issue of the standing of a party to challenge the constitutionality—on equal protection grounds—of the 8(a) program. The circuit court held that a business concern that had not sought to be certified as a socially and economically disadvantaged business lacks standing to attack the 8(a) program as a race-based program. *Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696 (5th Cir.1973), *cert. denied*, 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974). The facts in *Ray Baillie* bear a striking resemblance to the facts of this case. In *Ray Baillie*, a white-owned small business that had not been certified as an 8(a) firm and had never sought entry into the 8(a) program, filed a suit against the Small Business Administration and the Secretary of the Department of the Air Force, among others, seeking declaratory and injunctive relief. In addition, the plaintiff in *Ray Baillie* also filed a motion for a preliminary injunction to prevent a contract for the hauling of refuse to be restricted to bidding by 8(a) participants. *Id.* at 700.

The district court in *Ray Baillie* had determined that the 8(a) program was "unconstitutional because 'the primary criterion for eligibility is race, color, or ethnic origin' and that the '[p]laintiffs have been excluded from consideration because of their race.'" *Id.* at 709. The Fifth Circuit explicitly rejected this position—a position that Dynalantic embraces—in reversing the district court and held:

"[P]laintiffs have failed to meet ... [the injury-in-fact] requirement with respect to the issue of the SBA's alleged discrimination in administering the section 8(a) program. The plaintiffs never applied for

participation in the section 8(a) program. Furthermore, they do not even contend that they are socially and economically disadvantaged and therefore eligible for participation in the program. Thus, whatever the outcome of the litigation, the plaintiffs will not be directly affected."

*Ray Baillie*, 477 F.2d at 710.

The Fifth Circuit's opinion in *Ray Baillie* is in accord with our own district court's decision in *Fortec Constructors v. Kleppe*, 350 F.Supp. 171 (D.D.C.1972). In *Fortec*, a business that qualified as a small business under the SBA guidelines sought a preliminary injunction to prevent the withdrawing from competitive bidding of a contract for improvements at an air traffic control center and the awarding of the contract to an 8(a) participant. *See Fortec*, 350 F.Supp. at 172. The plaintiffs in *Fortec* had alleged, *inter alia*, that the 8(a) program was racially discriminatory and violated the Fifth Amendment and federal civil rights laws. *Id.* at 172 n. 1.

In determining whether the plaintiffs in *Fortec* had standing, the district court distinguished between the plaintiffs' standing to challenge the defendants *use* of the 8(a) program generally and plaintiffs' standing to attack the program by asserting that it is a racially discriminatory program. *See id.* at 172–73. The court held that the plaintiffs had standing to challenge the use of the 8(a) program in a bid procurement that excluded small business concerns. However, on the issue of plaintiffs' standing to sue defendants on the ground that the 8(a) program discriminates on the basis of race, the court held that:

"[P]laintiffs have never sought to be eligible for the 8(a) program, and never having had an 8(a) contract to gain, they cannot now allege that a contract was lost. Solely on the basis of some generalized interest in the fair administration of a program for which they may be ineligible, *plaintiffs*

---

6. In fact, during the course of oral argument, plaintiff conceded that non-minority contractors have been certified under the 8(a) program and

that Dynalantic, in fact, could have applied. Transcript of Preliminary Injunction Motion Hearing, April 18, 1996 at 36.

*cannot attack the award of this contract as racially discriminatory."*

*Id.* (emphasis supplied).

Plaintiff attempts to distinguish *Ray Baillie* and *Fortec* by stating that "[b]oth cases construed the respective plaintiff's claims as attempts to seek admission to the 8(a) program." Plaintiff's Reply to Defendants' Supplemental Brief at 5. Plaintiff's argument is not supported by the cases as the Court finds no such reference in either *Ray Baillie* or *Fortec.* In fact, in *Ray Baillie,* the Fifth Circuit specifically noted that the plaintiffs, like Dynalantic, "did not apply for participation in the program and ... did not contend that they were eligible." *Ray Baillie,* 477 F.2d at 700.

Dynalantic further attempts to distinguish *Ray Baillie* and *Fortec* by claiming that those cases merely involved challenges to the "administration" of the 8(a) program; however, plaintiff's attempted distinction is a matter of semantics and is without legal significance. The gravamen of plaintiff's complaint is that the 8(a) program is unconstitutional due to a single *administrative* regulation that provides minorities with a rebuttable presumption of social disadvantage. In fact, by challenging an administrative regulation, Dynalantic is certainly challenging the administration of the 8(a) program—as applied here—whether or not plaintiff seeks admission into the program or the benefits accorded to 8(a) participants.

Just like the plaintiffs in *Ray Baillie* and *Fortec,* Dynalantic has not applied to participate in the 8(a) program, nor does it contend that it currently satisfies the program's criteria for *either* social or economic disadvantage.[7] In *Ray Baillie,* the Fifth Circuit expressly focused upon the plaintiffs' inability to demonstrate an injury-in-fact. Similarly,

Dynalantic has failed to demonstrate any injury-in-fact since it has not alleged that it is either socially or economically disadvantaged.

Even assuming, *arguendo,* that Dynalantic has suffered a cognizable injury, it would still lack standing under the redressability prong of the Article III standing analysis. In this light, it is uncontested that the 8(a) program is race-neutral on its face and is intended to benefit individuals that are socially and economically disadvantaged. Plaintiff claims, in effect, that the presumption of social disadvantage that is included in the implementing regulations renders the entire statute and regulatory provisions unconstitutional as applied to the APT contract. However, "[a]dministrative regulations, like statutes, must be construed by courts, and the same rules of interpretation are applicable in both cases." *Rucker v. Wabash Railroad Company,* 418 F.2d 146, 149 (7th Cir.1969).

It is a well-established principle of law that a court should invalidate only so much of a statute as is necessary. *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 1479–80, 94 L.Ed.2d 661 (1987). "[W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid." *Regan v. Time, Inc.,* 468 U.S. 641, 652, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984) (internal quotation omitted). "Administrative regulations should be similarly construed to preserve their constitutionality, as far as possible, when a portion of the regulations is found unconstitutional and may be severable without otherwise disrupting the regulations' functions." *United States v. Rainbow Family,* 695 F.Supp. 294, 312 (E.D.Tex.1988).

---

7.  In fact, in one of its written submissions, Dynalantic all but acknowledged that it is not disadvantaged: "[T]his set-aside is based principally on the race of the contractor's owner and completely excludes *non-disadvantaged firms* from the procurement...." Plaintiff's Memorandum in Support at 9 (emphasis supplied). Further, Dynalantic has admitted that it has never claimed to be economically disadvantaged. In its reply to the LDF's brief, plaintiff stated that it "has not admitted that it is not 'economically disadvantaged' and has never addressed whether it could meet that requirement." Plaintiff's Reply to the LDF's Brief at 7 n. 5. In a supplemental brief filed after oral argument, the most that Dynalantic could state was that it believed "that it could arrange its financial affairs to meet the personal net worth criterion of the SBA's regulations." Plaintiff's Reply to Defendants' Supplemental Brief at 9 n. 3. However, aside from Dynalantic's tacit admission that its *current* financial position fails to satisfy the economic criterion of the 8(a) program, plaintiff has never alleged that it is socially disadvantaged.

In determining whether certain provisions of a statute or regulation are severable, the Supreme Court has held as follows: "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976) (internal quotation omitted). *See also, Bryant v. Secretary of Army,* 862 F.Supp. 574, 585 (D.D.C. 1994) (striking portion of Army regulation as unconstitutional, while preserving the remainder of the regulation). In the present case, it would appear almost self-evident that Congress would have enacted the 8(a) program irrespective of an implementing regulation such as 13 C.F.R. § 124.105(b). Not only was the statute passed before any ensuing implementing regulations were promulgated, but also the statute on its face is race-neutral and explicitly refers only to "socially and economically disadvantaged small business concerns."

Therefore, even if this Court were to determine that the implementing regulation that accords members of certain minority groups with a presumption of social disadvantage under the 8(a) program is constitutionally suspect, the Court could still find the balance of the statutory scheme and the remaining regulations to be constitutionally valid. If the presumption of social disadvantage were struck, all applicants to the 8(a) program would be required to demonstrate social disadvantaged status by presenting clear and convincing evidence. Further, as is presently the case, an 8(a) applicant would not be certified for participation unless he or she independently demonstrated economic disadvantage. Thus, Dynalantic's alleged injury-in-fact would not be redressed by striking 13 C.F.R. § 124.105(b) since it has failed to allege that it is either socially or economically disadvantaged.

Each of the three authorities that Dynalantic primarily relies upon for its standing argument is readily distinguishable from the present case. Plaintiff's reliance on *Northeastern Florida Contractors v. Jacksonville,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) is unavailing. In *Northeastern Florida Contractors,* the City of Jacksonville had enacted a statute that provided for the set-aside of public contracts based explicitly on the race of the contractor. In addressing standing, the Supreme Court held as follows:

> "[I]n the context of a challenge to a set-aside program, the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract. See [*City of Richmond v. J.A.*] *Croson [Co.],* 488 U.S. [469] at 493 [109 S.Ct. 706 at 721, 102 L.Ed.2d 854] [ (1989) ] ... ('The [set-aside program] denies certain citizens the *opportunity to compete* for a fixed percentage of public contracts solely upon their race').... To establish standing, therefore, a party challenging a set-aside program like Jacksonville's need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis."

*Northeastern Florida Contractors,* 508 U.S. at 666, 113 S.Ct. at 2303 (emphasis in original). However, Dynalantic has not demonstrated standing because the 8(a) program is not "a set-aside program like Jacksonville's" as 8(a) contracts are not awarded solely on the basis of race.[8]

Moreover, Dynalantic claims that it has standing as a result of the Supreme Court's decision in *Adarand v. Peña,* —— U.S. ——, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). *Adarand,* however, is distinguishable in three respects. First, *Adarand* did not address the issue of standing with respect to a suit challenging the constitutionality on equal protection grounds of the 8(a) program.[9]

---

**8.** As counsel for the NAACP Legal Defense and Educational Fund pointed out: "[The] 8(a) program is not exclusive. It does not exclude anyone on the basis of race. The 8(a) program is not automatic. In other words, you're black; show up and you get a contract." Transcript of Preliminary Injunction Motion Hearing, April 18, 1996 at 119.

**9.** Although Dynalantic's counsel stated many times during oral argument that *Adarand* held that the 8(a) program was a race-based program, the Supreme Court in *Adarand* made no such

Second, in *Adarand,* the non-minority plaintiff was permitted to compete for the subcontract at issue. In fact, it was uncontested that the plaintiff, as the low bidder, would have been awarded the subcontract had it not been for the financial incentive provided to the prime contractor to hire a subcontractor certified as socially and economically disadvantaged. In this case, Dynalantic may not bid for the APT contract because it has not alleged that it is either socially or economically disadvantaged. For Dynalantic to claim that it is "unable to compete on equal footing," it must demonstrate that it is economically disadvantaged since "the SBA's 8(a) program requires an *individualized inquiry into the economic disadvantage of every participant.*" *Adarand,* —— U.S. at ——, 115 S.Ct. at 2118 (emphasis supplied). Third, it is unclear by what means the minority contractor that had been awarded the subcontract at issue in *Adarand,* had been certified as a socially and economically disadvantaged business. *Id.* at ——, 115 S.Ct. at 2104.

Of the three possible ways in which a subcontractor could have been certified as a socially and economically disadvantaged business, certification through the 8(a) program was the only method that unambiguously required an individualized showing of economic disadvantage. *Id.* at —— —— ——, 115 S.Ct. at 2102–2103. *See infra* n. 12. Again, *Adarand* is distinguishable in view of the Supreme Court's recognition that race could have been used as a proxy to establish the minority subcontractor's social *and* economic disadvantage for purposes of certification under the subcontracting program at issue. While the record in *Adarand* does not disclose clearly that the certification procedure utilized by that minority contractor lacked any race-neutral assessment of the applicant's disadvantaged status, the 8(a) program

under consideration in the present case *does* provide for an individualized, race-neutral assessment of an applicant's disadvantaged status as the Supreme Court recognized in *Adarand.*

Finally, our circuit's decision in *Jacobs v. Barr,* 959 F.2d 313 (D.C.Cir.1992), *cert. denied,* 506 U.S. 831, 113 S.Ct. 95, 121 L.Ed.2d 56 (1992), which Dynalantic also chiefly relies upon, also persuades this Court that plaintiff lacks standing, despite some of the more expansive language in that opinion.[10] In *Jacobs,* a German–American who had been interned at Ellis Island during World War II, challenged on equal protection grounds the constitutionality of the Civil Liberties Act of 1988 that provided compensation to World War II interns of Japanese and Aleutian ancestry. The statute did not provide compensation to interns of German ancestry.

Dynalantic fails to satisfy the precise holding in *Jacobs* that addresses the injury-in-fact requirement. Relying on *Heckler v. Mathews,* 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984), the Court of Appeals held:

> "[T]he *Heckler* test ... requires [Mr. Jacobs] ... to allege the same injuries as the Japanese and Aleuts, and that he has been denied compensation because of his national origin."

*Id.* at 316. In *Jacobs,* the German–American plaintiff had been interned during World War II just like the interns of Japanese ancestry. Here, Dynalantic has not alleged that it is socially disadvantaged or has otherwise experienced barriers to forming or conducting its business based upon any cultural or ethnic bias. Therefore, it has not demonstrated that it has suffered an injury-in-fact because irrespective of the presumption set forth in 13 C.F.R. § 124.105(b), plaintiff has never claimed to be disadvantaged in any

ruling. The Supreme Court did note that the case involved "classifications based explicitly on race." *Adarand,* —— U.S. at ——, 115 S.Ct. at 2105. However, while the 8(a) program's implementing regulations do utilize a race-conscious presumption of social disadvantage, this alone does not render the entire program race-based.

**10.** Dynalantic has focused—in part—upon the following language in *Jacobs* that addresses the injury-in-fact criteria that reads:

> "When the injury alleged is the denial of equal protection, plaintiffs must also allege that they are being denied equal treatment solely as a result of the classification they are challenging."

*Jacobs,* 959 F.2d at 316. While arguably plaintiff appears to satisfy this requirement, it cannot satisfy the remaining standing requirements set forth in *Jacobs.*

manner resembling any of the definitions of disadvantage set forth in the 8(a) statute.

Dynalantic also cannot demonstrate that it can satisfy the redressability test set forth in *Heckler v. Mathews*, 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984) and discussed in some detail in *Jacobs. Jacobs*, 959 F.2d at 317. In *Heckler*, the Supreme Court held that a court may redress an equal protection violation by either nullifying the statute or extending its benefits to those improperly excluded. *Heckler*, 465 U.S. at 738–39, 104 S.Ct. at 1394–95. However, as discussed previously, even if this Court were to declare 13 . C.F.R. § 124.105(b) unconstitutional, plaintiff could not compete for the APT contract due to the well-established doctrine of severability.[11] In view of *Heckler*, the same result obtains were this Court to extend the presumption of social disadvantage to Dynalantic. Accordingly, for the foregoing reasons, plaintiff lacks standing to challenge the constitutionality of the 8(a) program.

Having reached this conclusion, arguably a legal basis exists for a dismissal of this case in its entirety for lack of subject-matter jurisdiction. *See generally FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990); *Animal Legal Defense Fund, Inc. v. Espy*, 23 F.3d 496, 499 (D.C.Cir.1994). Since the Court raised the issue of standing, *sua sponte*, however, the Court will reserve ruling on the ultimate issue of dismissal until the parties have had an opportunity to address it. Moreover, in an abundance of caution, the Court will now proceed to address the alternative issue of whether plaintiff has established a factual and legal predicate for the issuance of a preliminary injunction.

## V. Plaintiff's Motion for a Preliminary Injunction Must Be Denied

To prevail on a Motion for a Preliminary Injunction, a plaintiff must demon-strate, (1) a substantial likelihood of success on the merits; (2) that immediate and irreparable harm will result absent injunctive relief; (3) that the threatened harm to plaintiff substantially outweighs any harm that the injunction might pose to defendants and third parties; and (4) that the public interest will be furthered by granting an injunction. *Sea Containers Ltd. v. Stena AB, et al.*, 890 F.2d 1205, 1208 (D.C.Cir.1989); *Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 151 (D.C.Cir.1985); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977). Application of these four factors compels the conclusion that plaintiff's motion for a preliminary injunction must be denied.

### A. Likelihood of Success on the Merits

If Dynalantic lacks standing, as previously discussed, it logically follows that it cannot demonstrate a substantial likelihood of success on the merits. As this Court has stated, plaintiff has never claimed to be either socially or economically disadvantaged. Moreover, the Supreme Court in *Adarand* specifically stated that in evaluating whether the certification procedure set forth under the 8(a) program would be deemed constitutional under a strict scrutiny analysis, the provision in "the 8(a) program requir[ing] an individualized inquiry into the economic disadvantage of every participant" could be quite relevant. *Adarand v. Peña*, —— U.S. ——, ——, 115 S.Ct. 2097, 2118, 132 L.Ed.2d 158 (1995). The Supreme Court contrasted the 8(a) program's race-neutral assessment of an applicant's economic disadvantage with the two other possible certification procedures implicated that did not plainly contain any race-neutral assessment of an applicant's disadvantaged status.[12]

---

11. Plaintiff maintains that if this Court were to determine that the APT procurement could not be set-aside for competition amongst 8(a) participants, it could "compete free of unconstitutional racial discrimination" for the contract. Plaintiff's Reply to Defendants' Supplemental Brief at 9. The flaw in this analysis is that plaintiff assumes that if the Court were to find the presumption of social disadvantage to be unconstitutional, this Court would inexorably be required to invalidate the entire 8(a) statutory scheme as applied to this procurement. Plaintiff's analysis does not reflect any consideration of the severability doctrine.

12. One of these alternative certification procedures, under the Department of Transportation's regulations, clearly did not contain any race-neutral assessment of an applicant's disadvantaged status; it is also not clear from the record in *Adarand* that under the other method of certi-

Moreover, the Supreme Court in *Adarand* simply held that federal racial classifications are subject to strict scrutiny and remanded the case to the district court for that court to consider the constitutionality of the subcontracting program at issue under a strict scrutiny analysis.[13]  As the Supreme Court in *Adarand* took the rare occasion to overturn one of its very recent precedents, *viz. Metro Broadcasting, Inc. v. F.C.C.*, 497 U.S. 547, 110 S.Ct. 2997, 111 L.Ed.2d 445 (1990), there are undoubtedly a number of issues of first impression that will be presented before district courts throughout the country.  The Supreme Court expressly stated that the district courts are to address the many unanswered issues not resolved in *Adarand.*  The Court held:

> "[U]nresolved questions remain concerning the details of the complex regulatory regimes implicated by the use of the subcontractor compensation clauses. . . .  The question whether any of the ways in which the Government uses subcontractor compensation clauses can survive strict scrutiny . . . *should be addressed in the first instance by the lower courts.*"

*Adarand*, —— U.S. at ——, 115 S.Ct. at 2118 (emphasis supplied).

Not surprisingly, many issues of first impression are raised in the present case.  For example, the degree to which, if any, congressional findings are entitled to some heightened level of deference is not ascertainable at this time.  Moreover, drawing on antitrust principles, the relevant geographic and product markets that Congress must consider in fashioning a federal remedial program have not been fleshed out.  Further, in this case, this Court may have to consider whether Congress must make findings specifically addressing discrimination in the military simulator industry or whether Congress may rely upon findings of discrimination in

the defense contracting industry more generally.  With respect to the geographic market, it is unclear at the present time, with the limited record developed to date, whether Congress may rely upon evidence of discrimination in just a few states or whether Congress must demonstrate that there has been discrimination throughout the country.  Thus, plaintiff has not demonstrated a strong likelihood of success on the merits.

### B.  Irreparable Harm

Dynalantic asserts that in light of the holding in *O'Donnell Construction Company v. District of Columbia*, 963 F.2d 420, 428 (D.C.Cir.1992), plaintiff's inability to compete for the APT contract—standing alone—demonstrates irreparable harm.  While the court of appeals in *O'Donnell* did address the difficulty that the O'Donnell company would face in proving its damages if the explicit minority set-aside program at issue was not enjoined, the D.C. Circuit did not consider the issue of damages in a vacuum for purposes of assessing irreparable harm.  The *O'Donnell* court held that the difficulty plaintiff would likely face in proving damages weighed "in favor of granting the injunction, especially since O'Donnell's likelihood of success is so high." *Id.*  In this case, the Court has determined that Dynalantic has not demonstrated a strong likelihood of success on the merits.

Even if Dynalantic were to prevail on the merits, assuming standing, under the doctrine of severability discussed *supra*, it appears at this time that Dynalantic may still be required to be certified as socially and economically disadvantaged before it could compete for the APT contract.  Again, Dynalantic has not claimed to be either socially or economically disadvantaged.  Therefore, it is the opinion of this Court that plaintiff has failed to demonstrate that it will suffer irreparable harm.[14]

---

fication, pursuant to the 8(d) program, whether an individualized showing of an applicant's economic disadvantage was required. *Id.*

**13.**  To date, the district court in *Adarand* has not rendered a decision on remand.  Counsel for Mountain States Legal Foundation informed this Court that motions for summary judgment were scheduled to be filed on May 1, 1996 in the

district court.  Transcript of Preliminary Injunction Motion Hearing, April 18, 1996 at 133.

**14.**  For all of the reasons previously articulated, the Court is persuaded that the public's interest, together with plaintiff's failure to demonstrate that the threatened harm it may suffer substantially outweighs any harm that an injunction might pose to defendants and third parties, indicate that the extraordinary relief that plaintiff

## VI. Conclusion

It is well-established that injunctive relief is an "extraordinary remedy." *See Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803–04, 72 L.Ed.2d 91 (1982). Such relief is not warranted in this case. Accordingly, it is hereby

**ORDERED** that Dynalantic Corporation's Motion for a Preliminary Injunction restraining the United States Government from limiting a solicitation of bids for the subject procurement to firms certified under the Small Business Administration's Section 8(a) program is **DENIED.**

**SO ORDERED.**

### ADDENDUM

On August 9, 1996, the Court granted the defendant's motion for judgment on the pleadings on the ground that plaintiff lacked standing and dismissed this case.

seeks in the form of a preliminary injunction is not warranted. Moreover, in view of the highly deferential standard of review under the Administrative Procedure Act, *see Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) and *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C.Cir.), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976), the Court is not prepared to rule at this juncture, on the limited record developed to date, that the Navy's decision to reserve the procurement at issue for section 8(a) competition was an irrational and unlawful means of implementing the 8(a) program. *See Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir. 1973); *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289 (D.C.Cir.1971).