Brian SNAPP, Plaintiff-Appellant,

v.

UNLIMITED CONCEPTS, INC. d.b.a. Ramshackle's Café, Glen Gerkin, Defendants-Appellees.

No. 98-2936.

United States Court of Appeals,

Eleventh Circuit.

April 5, 2000.

Appeal from the United States District Court for the Middle District of Florida, (No. 96-00707-CIV-J-21A), Ralph W. Nimmons, Jr., Judge.

Before TJOFLAT and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Brian Snapp filed this action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201-219 (1994), as amended, in the United States District Court for the Middle District of Florida against Unlimited Concepts, Inc., doing business as Ramshackle's Café, and Glen Gerken, the owner, President, and Chief Executive Officer of Ramshackle's.[1] Plaintiff alleged that the Ramshackle's Café was "Ramshackle" in more than name only.[2] Snapp complained that while working at the café, he suffered violations of the minimum wage, overtime wage, and anti-retaliation provisions of the FLSA. He sought judgment for unpaid minimum compensation, overtime compensation, liquidated damages, and attorneys fees; plaintiff also sought compensatory and punitive damages for his alleged retaliatory discharge.[3] The issue in this appeal is whether plaintiff can recover punitive damages on his retaliatory discharge claim.

[1]Plaintiff also named as a defendant Staff Leasing, Inc., now known as Bill Mullis Enterprises, Inc., but the district court later dismissed the complaint as to Staff Leasing because of the plaintiff's failure to perfect service of process as required by Federal Rule of Civil Procedure 4.

[2]Webster's Third defines "ramshackle" as, *inter alia,* "having little moral sense," and lists as synonyms the words "dissipated" and "unruly." *Webster's Third New International Dictionary* 1879 (1993).

[3]Plaintiff's prayer for compensatory damages was based upon his allegation that he suffered severe physical and emotional pain and suffering because of his retaliatory discharge.

I.

A.

The FLSA requires, *inter alia,* employers to pay covered employees a minimum wage, and to provide additional compensation for overtime work. 29 U.S.C. § 206(a)(1) specifies minimum rates of compensation, and section 207(a)(1) requires employers to pay employees "at a rate not less than one and one-half times the regular rate" of pay for any time spent working in excess of forty hours per week. The Act also contains an anti-retaliation provision. Section 215(a)(3) prohibits employers from

> discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

The penalties section of the Act, 29 U.S.C. § 216, provides for both criminal sanctions and private rights of action. Under section 216(a),

> [a]ny person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.[4]

In contrast to the criminal penalties provided in section 216(a), section 216(b) authorizes private causes of action against employers for violations of the Act. Section 216(b) also describes the relief afforded to a successful plaintiff:

> [a]ny employer who violates the provisions of section 206 or section 207 [the minimum wage and overtime wage provisions] ... shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) [the anti-retaliation provision] ... shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action....

---

[4]Section 215(a)(2) makes it unlawful "to violate any of the provisions of section 206 or section 207," and as noted above, section 215(a)(3) contains the FLSA's anti-retaliation provision.

29 U.S.C. § 216(b). Congress added the language allowing suits against employers for violations of section 215(a)(3)'s anti-retaliation provision in 1977. *See* Fair Labor Standards Amendments of 1977, Pub.L. 95-151, 91 Stat. 1245, 1252 (1977). Before then, employees had to rely on the criminal and injunctive relief provided in sections 216(a) and 217 to discourage employers from retaliating against them. *See Mitchell v. Robert De Mario Jewelry, Inc.,* 361 U.S. 288, 289, 80 S.Ct. 332, 333-34, 4 L.Ed.2d 323 (1960).[5] Plaintiff contends that the 1977 amendment authorizes courts to award punitive damages in retaliation suits against employers.

### B.

The events giving rise to plaintiff's grievance occurred while he was working as a waiter at the Ramshackle's Café. In his complaint, plaintiff alleged that he was paid less than the minimum wage for time spent performing janitorial and cooking duties (for which he was not tipped), and that he was not paid overtime wages for time worked in excess of forty hours per week. Weeks before filing the complaint, plaintiff was alerted that such practices might be unlawful under the FLSA when he spoke to an attorney friend at a social gathering. Plaintiff first wrote to the Wage and Hour Division of the United States Department of Labor to express his concern that he was "being taken advantage of." This backfired, however, when plaintiff's boss, Glen Gerken, discovered that he had contacted the Department. After telling plaintiff that he should have voiced his concerns to restaurant management rather than involving outsiders, Gerken terminated plaintiff from further employment. Included in plaintiff's complaint was an allegation that he had been fired in retaliation for asserting his rights under the FLSA in violation of section 215(a)(3).

---

[5] 29 U.S.C. § 217 provides, in pertinent part:

> The district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title....

In *Mitchell,* the Supreme Court interpreted that section to allow courts to award lost wages to employees who had been retaliated against by their employers, in addition to injunctive relief, in cases brought by the Secretary of Labor to enforce the Act. *Mitchell,* 361 U.S. at 296, 80 S.Ct. at 337.

After plaintiff filed his complaint in the district court, defendants filed a motion to dismiss all damages claims against Glen Gerken, individually, and all claims for compensatory and punitive damages. The district court denied the motion, finding that the statutory definition of an "employer" under the FLSA, *see* 29 U.S.C. § 203(d),[6] could encompass the defendant Gerken, individually,[7] and that appropriate legal relief under section 216(b) for an employer's retaliation could include compensation for emotional distress and punitive damages.

At trial, the jury found that plaintiff had failed to prove by a preponderance of the evidence that he had not been paid a minimum wage under the FLSA, but also found that the defendants were guilty of violating the overtime wage and anti-retaliation provisions of the Act. The jury awarded plaintiff $200 in overtime wages, $1,000 in wages lost because of his retaliatory discharge, and $35,000 in punitive damages on the retaliation claim. The jury also found that Gerken, individually, was plaintiff's "employer" (along with the Ramshackle's Café) under the FLSA, and recommended that Gerken be liable for thirty percent of the punitive damage award.

Thereafter the district court ordered the parties to file memoranda of law regarding the availability of punitive damages in suits for retaliation under section 216(b) of the FLSA.[8] The court decided to revisit the issue after noting that an intervening decision by a sister court had interpreted binding circuit precedent to prohibit punitive damages under the FLSA, *see Bolick v. Brevard County Sheriff's Dep't.,* 937 F.Supp.

---

[6]"[E]mployer" includes, *inter alia,* "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

[7]We do not reach the issue of whether the district court's determination that Gerken could be sued individually as an "employer" under the FLSA is correct.

[8]Defendants moved for judgment as a matter of law on the issue of punitive damages at the close of all the evidence. The court took the issue under submission, pending the jury's verdict. After the jury returned a verdict for $35,000 in punitive damages on the retaliation claim, the court stated that it was still considering the punitive damages issue, and then directed the parties to file relevant memoranda of law. Because the court appears to have engaged in a dialogue with the defendants concerning the availability of punitive damages in retaliation cases immediately after the jury returned its verdict, we find that the Rule 50(b) requirements for a renewed motion for judgment as a matter of law were met in this case.

1560, 1566-67 (M.D.Fla.1996). After examining *Bolick,* the court concluded that it was persuasive and granted the defendants' renewed motion for judgment as a matter of law on the issue of punitive damages. The court thus struck the $35,000 in punitive damages awarded to plaintiff on his retaliation claim.[9] Plaintiff now appeals.

## II.

We review the district court's grant of defendants' motion for judgment as a matter of law on the issue of punitive damages *de novo. Dade County v. Alvarez,* 124 F.3d 1380, 1383 (11th Cir.1997). Whether a court can award punitive damages to a plaintiff who has proven a violation of the FLSA's anti-retaliation provision consistent with 29 U.S.C. § 216(b) is a question of statutory interpretation. Questions of statutory interpretation are pure questions of law. *See Caro-Galvan v. Curtis Richardson, Inc.,* 993 F.2d 1500, 1504 (11th Cir.1993).

---

[9]Under 29 U.S.C. § 260,

> [i]n any action ... to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

The district court noted that section 260 only appears to provide a good faith defense to an award of liquidated damages when an employer has been found to violate either the minimum wage, or the overtime wage provisions of the FLSA, *see* 29 U.S.C. §§ 206, 207. Section 215(a)(3)'s anti-retaliation provision is not mentioned. Nevertheless, the court concluded that the same good faith defense available for violations of sections 206 and 207 is also available for violations of section 215(a)(3). On the merits, however, the court concluded that the defendants had failed to prove their entitlement to the good faith defense to liquidated damages on either the overtime wage or the retaliation claims. After the court set aside the punitive damage award, plaintiff was left with a jury award of $200 in overtime wages and $1,000 in lost wages as a result of his retaliatory discharge. Section 216(b) provides that a court may award "an additional equal amount as liquidated damages" for both of these violations. Therefore the court doubled the sum of plaintiff's awards on overtime and lost wages, and entered judgment in favor of the plaintiff against the defendant Unlimited Concepts, Inc. in the amount of $2,400. Defendant Glen Gerken was relieved of any personal liability for damages since the jury had made him thirty percent liable on the punitive damages award only.

III.

A.

This case presents us with a question of first impression in this circuit regarding the proper construction of section 216(b). The question is, when Congress amended the FLSA in 1977 to provide for a private right of action when an employer violates section 215(a)(3), did the amendment include language allowing plaintiffs to recover punitive damages as part of their legal relief? Plaintiff, of course, answers this question in the affirmative; and he finds support from the only other circuit to have addressed the issue. In *Travis v. Gary Community Mental Health Ctr., Inc.,* 921 F.2d 108, 112 (7th Cir.1990), the Seventh Circuit held that "punitive damages[ ] are appropriate for intentional torts such as retaliatory discharge." The court reached its holding after observing that the 1977 retaliation amendment to section 216(b) includes broader language than the original language providing remedies for violations of sections 206 and 207 (the minimum wage and overtime wage provisions).[10] How much broader Congress declined to state explicitly; so without much discussion, the Seventh Circuit concluded that Congress had tossed the issue to the judiciary, and that in the judgment of the court, punitive damages were a reasonable component of the legal relief afforded to successful plaintiffs in retaliation cases.

> Because the original text prescribed as a remedy double the shortfall of wages [for violations of sections 206 and 207], and the amendment says that damages include this "without limitation", Congress has authorized other measures of relief. Which other forms? The answer has been left to the courts. We could not find any case interpreting this amendment. The legislative history is unhelpful. The language originated in the Senate; the committee report does not discuss it. The Conference Committee adopted the Senate's proposal, remarking that the bill authorizes suits "for appropriate legal or equitable relief" without describing what relief might be "appropriate". H.R. Conf. Rep. No. 95-497, 95th Cong., 1st Sess. 16 (1977).

> Appropriate legal relief includes damages. Congress could limit these damages, but the 1977 amendment does away with the old limitations without establishing new ones. Compensation for

---

[10]As noted *supra,* section 216(b) of the FLSA limits a plaintiff's remedies to "unpaid minimum wages, or ... unpaid overtime compensation, as the case may be, and ... an additional equal amount as liquidated damages" for violations of sections 206 and 207. The damages a court may impose against an employer who violates section 215(a)(3) appear more expansive, including any "legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)." 29 U.S.C. § 216(b).

emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge.

*Travis,* 921 F.2d at 111-12.

B.

We disagree with the Seventh Circuit's conclusion that punitive damages are available under section 216(b). In interpreting the statute we begin, as always, with the plain language Congress enacted. As noted above, the statute provides that

[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). Plaintiff contends that the "legal relief" courts are empowered to award is broad enough to include punitive damages.

"Legal relief" is certainly a broad formulation. It would have almost no boundary at all were it not for the commonly understood division between the "legal" and "equitable" powers of a court. Where such an expansive term is used, we look for clues within the statute to help us understand the exact nature of the "legal relief" that Congress intended; and we are not disappointed when we look to section 216(b). When an employer violates the minimum wage or overtime wage provisions of sections 206 and 207, Congress has provided that the employer is liable for "unpaid minimum wages, or ... unpaid overtime compensation, as the case may be, and ... an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). And for violations of section 215(a)(3)'s anti-retaliation provision, Congress has not abandoned all specificity. Although the statute says that these forms of relief may be included in a judgment "without limitation," Congress has specifically empowered a court to order "employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." *Id.*

Although it is clear that Congress did not limit a court in retaliation cases to the enumerated forms of relief, there is something that all of the relief provided in section 216(b) has in common: it is meant to

7

*compensate* the plaintiff. Awards of unpaid minimum wages, unpaid overtime compensation, employment, reinstatement, promotion, and the payment of wages lost all attempt to put the plaintiff in the place she would have been absent the employer's misconduct. Even the liquidated damages provision is compensatory in nature. "[T]he liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945); *see also Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583, 62 S.Ct. 1216, 1223, 86 L.Ed. 1682 (1942).[11]

Given that the evident purpose of section 216(b) is compensation, we reject plaintiff's argument that "legal relief" includes punitive damages. When so broad a term as "legal relief" is included in a statutory provision that delineates more specific forms of redress, the judicial mind naturally turns to the principle of *ejusdem generis.* We must interpret "a general statutory term ... in light of the specific terms that surround it." *Hughey v. United States,* 495 U.S. 411, 419, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990). It is clear that all of the relief provided in section 216(b) is compensatory in nature. Punitive damages, however, have nothing to do with compensation. Punitive damages are generally available for willful or intentional violations of a common law or statutory duty, and their purpose is to punish and deter the wrongdoer rather than to compensate the aggrieved party. Therefore, punitive damages would be out of place in a statutory provision aimed at making the plaintiff whole.

We are strengthened in our holding when we look at the rest of the remedial scheme provided in section 216. We read each statutory provision with reference to the whole Act. "[I]n expounding a statute, we [are] not ... guided by a single sentence or member of a sentence, but look to the provisions of the whole

---

[11]The Supreme Court in *Brooklyn Savings Bank* and *Overnight Motor Transportation Co.* was addressing the liquidated damages provision in the part of section 216(b) dealing with violations of sections 206 and 207. However, the same compensatory rationale would apply to awards of liquidated damages in retaliation suits.

law." *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987)); *see also Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989). Further, we should avoid reading statutory language to address an issue not specifically covered in the text when Congress has addressed the issue in more specific language elsewhere. *See generally West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).

In contrast to the make-whole provisions of section 216(b), Congress provided for punitive sanctions in section 216(a):

> Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.

29 U.S.C. § 216(a). We disagree with the Seventh Circuit's contention that Congress has "left [the issue of appropriate remedies in retaliation cases] to the courts." *Travis,* 921 F.2d at 111. Congress has enacted a comprehensive remedial scheme for violations of the FLSA's substantive provisions that covers the whole terrain of punitive sanctions, compensatory relief, private rights of action, and actions brought by the Secretary of Labor.[12] It is clear that section 216(a), which provides criminal penalties for "willful[ ]" violations, is punitive in purpose; and section 216(b), as we have already found, is clearly compensatory.

---

[12]In addition to providing for private rights of action for suits against employers who violate the FLSA's minimum wage, overtime wage, and anti-retaliation provisions, section 216(b) further provides:

> The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

29 U.S.C. § 216(b).

Even if we were to ignore the obvious ramifications of the *ejusdem generis* canon in interpreting "legal relief" in section 216(b), we would still not find that Congress meant that term to include punitive damages. This is because Congress has already covered punitive sanctions in section 216(a); and there is simply no reason to carry the punitive element over from section 216(a) to section 216(b), a provision intended to compensate, not punish.[13]

Nor would it be a sort of "harmless error" to include punitive damages as part of the "legal relief" authorized by Congress in section 216(b). It may be that Congress has deliberately chosen, in some contexts, to leave statutory language ambiguous; such a choice is predicated on the idea that courts can use their expertise to develop a particular area of law most effectively when they are given the power to operate within broad legislative guidelines (though, from a separation of powers standpoint, this idea is problematic, *cf. Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 865, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694 (1984) ("Courts must, in some cases, reconcile competing political interests, but not on the basis of the judges' personal policy preferences.")). Thus comes the Seventh Circuit's conclusion that the answer to what remedies are appropriate in retaliation cases "has been left to the courts." *Travis,* 921 F.2d at 111. But we should not be quick to conclude that Congress either neglected to consider an issue related to its enactments, or decided to avoid the issue and leave its resolution to the courts. Such a predisposition on our part makes for activist judges and lazy Congressmen. Instead, we should search the statutory language and structure with the assumption that Congress knew what it was doing when it enacted the statute at issue.

When we search the FLSA with that assumption in mind, we discover that it really does matter whether we import punitive damages into section 216(b)'s allowance for "legal relief." Punitive damages, in general, are the exception and not the rule; they are awarded when a jury finds that a defendant's act was

---

[13]We also note that even though the purpose of section 216(b) is compensation, the actual effect of the liquidated damages provision provides further deterrence to an employer's violation of the FLSA's anti-retaliation provision. *See Brooklyn Sav. Bank,* 324 U.S. at 709-10, 65 S.Ct. at 903 (finding that Congress plainly intended section 16(b) to have a "deterrent effect").

wrongful in that it was willful or intentional (as opposed to merely negligent). Every act of retaliation, however, is inherently willful—the act is motivated by the employer's conscious desire to "get back" at the employee for exercising her protected rights. What this means is that if punitive damages can be awarded in retaliation cases under section 216(b), then they should be awarded in every case as a matter of course. A jury could hardly refuse to award them; given the jury instruction that the plaintiff is entitled to punitive damages if the retaliation was intentional (and given that all retaliation is inherently intentional), the damages would flow inexorably from any finding for the plaintiff.

When we look at the FLSA's remedial scheme, however, it becomes clear that Congress did not intend that punitive sanctions be imposed in all retaliation cases. Section 216(a) vests the executive branch with the responsibility of exacting punitive sanctions from the employer; and the enforcement of section 216(a)'s criminal provisions is *discretionary*. All retaliation is intentional. In charging the executive branch with the duty of enforcing section 216(a), Congress meant the Executive to make a determination concerning which cases of intentional retaliation are so egregious that they warrant the imposition of an additional punitive deterrent. This grant of discretion is plainly at odds with a reading of section 216(b) that would, by necessity, require the imposition of punitive damages in every case. Further, by addressing punitive sanctions with a criminal rather than a civil remedy, Congress clearly sought to limit their application to cases in which the government can prove beyond a reasonable doubt that the defendant acted willfully to violate the anti-retaliation provisions of the Act. That Congress made the imposition of punitive sanctions dependent on the government's carrying the heightened burden of proof involved in criminal prosecution is more evidence that it would be a mistake to allow plaintiffs to recover punitive damages under section 216(b)'s civil preponderance burden.[14]

---

[14]We also note that section 216(a) limits punitive sanctions "to a fine of not more than $10,000, or to imprisonment for not more than six months, or both." It also provides that "[n]o person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection." Civil punitive damage awards, on the other hand, might reach six or seven figures, depending on the defendant's net worth and ability to pay. We realize that there is nothing extraordinary

We think, therefore, that the Seventh Circuit's reading of section 216(b) cannot be squared with the statutory design. It is true that the language in section 216(b) dealing with violations of section 215(a)(3) appears broader than the original language addressing violations of sections 206 and 207. *See supra* n. 9. We do not think, however, that this difference indicates that Congress meant to abandon all restraints and throw open the doors to every conceivable variety of damages in retaliation cases. We think, instead, that the difference in the remedial language is tied to differences in the nature of minimum wage and overtime wage cases on the one hand, and retaliation cases on the other. In minimum wage and overtime wage cases, plaintiffs are limited to recovering "their unpaid minimum wages, or their unpaid overtime compensation ... and ... an additional equal amount as liquidated damages" because those are the only damages necessary to compensate the aggrieved employee. 29 U.S.C. § 216(b). In retaliation cases, on the other hand, "employment, reinstatement, promotion, and the payment of wages lost" may not fully compensate the plaintiff. *Id.* Congress provided for, in addition, "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)" because the kinds of relief that a district court may need to award to compensate the plaintiff fully will vary with the facts of each case. Front pay is just one example, when for various reasons the court finds it undesirable to order an employee's reinstatement. That district courts may have to exercise some creativity in awarding relief in retaliation cases does not mean that Congress meant that courts can award damages that go completely outside the boundaries of section 216(b)'s compensatory purpose.

Plaintiff also argues that the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), compels the conclusion that "legal relief" includes punitive damages. In that case the Supreme Court held that "[w]here legal rights have been invaded,

---

about the fact that Congress set out the exact level of sanction to be imposed on criminal violators of the FLSA. Congress sets out the penalty in every criminal statute. But there is something incongruous about allowing plaintiffs to recover punitive damage awards that far exceed the punitive sanctions imposed under section 216(a), even though civil plaintiffs only have to prove their case by a preponderance of the evidence, and even though the Executive may decline to enforce section 216(a) in many cases because the employer's violation is not viewed as sufficiently egregious to warrant a punitive sanction.

12

and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Id.* at 66, 112 S.Ct. at 1033 (quoting *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)). The *Franklin* presumption only applies, however, when "a right of action exists to enforce a federal right and Congress is silent on the question of remedies." *Id.* at 69, 112 S.Ct. at 1034; *see also Lane v. Pena,* 518 U.S. 187, 197, 116 S.Ct. 2092, 2099, 135 L.Ed.2d 486 (1996) (finding that the Rehabilitation Act of 1973, 29 U.S.C. § 791-794e (1994), fell outside of the rule of *Franklin* because "Congress has ... spoken to the question of remedies"); *Landgraf v. USI Film Prods.,* 511 U.S. 244, 286 n. 38, 114 S.Ct. 1483, 1508 n. 38, 128 L.Ed.2d 229 (1994) ("Title VII of the Civil Rights Act of 1964 is not a statute to which we would apply the 'traditional presumption in favor of all available remedies.' That statute did not create a 'general right to sue' for employment discrimination, but instead specified a set of 'circumscribed remedies.' " (citations omitted)). Congress has been far from silent on the question of remedies for violations of the FLSA. That Congress saw fit to detail so many forms of appropriate relief in section 216 makes plaintiff's contention that the legislature provided for nothing more than a "general right to sue" almost laughable. And when Congress has laid out a statutory scheme that redresses violations of a federal right, it is not the judiciary's role to supplement the legislative determination. *Cf. Touche Ross & Co. v. Redington,* 442 U.S. 560, 568-69, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979) (declining to infer a private cause of action under section 17(a) of the Securities Exchange Act because the judicial "task is limited solely to determining whether Congress intended to create the private right of action"); *cf. also Chandler v. James,* 180 F.3d 1254, 1275 (11th Cir.1999) (Tjoflat, J., specially concurring), *petition for cert. filed,* 68 U.S.L.W. 3391 (U.S. Dec. 2, 1999) (No. 99-935) (discussing the separation of powers concerns that arise when courts use the injunctive remedy beyond what Congress has prescribed).

We also feel some constraint to exclude punitive damages from the "legal relief" provided in section 216(b) by the former Fifth Circuit's decision in *Dean v. American Security Ins. Co.,* 559 F.2d 1036 (5th

Cir.1977).[15] In *Dean,* the court was called upon to decide, *inter alia,* whether remedial language in the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-634 (1994), allowed plaintiffs to recover punitive damages. The language in section 626 of the ADEA is similar to that found in the remedial portions of the FLSA:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter *the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter,* including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b) (emphasis added). The *Dean* court concluded,

> [t]he provisions for liquidated damages for willful violation of the Act and its silence as to punitive damages convinces us that the omission of any reference thereto was intentional. In 1968, only one year after the passage of the ADEA, Congress passed the fair housing provisions of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3619. Section 3612(c) thereof expressly authorizes the recovery of punitive damages.... Thus it is obvious that, if Congress believed punitive damages necessary to eliminate discrimination in employment based on age, it knew exactly how to provide for them.

*Dean,* 559 F.2d at 1039. The "legal relief" language in the ADEA is exactly the same as that found in the FLSA, and so we conclude that the FLSA should be interpreted similarly to preclude an award of punitive damages. *See Bolick,* 937 F.Supp. at 1566-67.

Plaintiff counters by arguing that the liquidated damages provisions in the two statutes serve different purposes. In the FLSA, liquidated damages are compensatory in nature, but the ADEA's requirement of "willful[ness]" for an award of liquidated damages means that they serve a punitive purpose. *See Commissioner of Internal Revenue v. Schleier,* 515 U.S. 323, 331, 115 S.Ct. 2159, 2165, 132 L.Ed.2d 294 (1995) ("[T]he liquidated damages provisions of the ADEA were a significant departure from those in the

---

[15]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down on or before September 30, 1981.

FLSA."); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985) ("The legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature."); *Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094, 1102 (11th Cir.1987) ("ADEA liquidated damages awards punish and deter violators, while FLSA liquidated damages merely compensate for damages that would be difficult to calculate."). Plaintiff reasons that the liquidated damages provision in the ADEA covers the issue of punitive sanctions; therefore, there was no reason, in *Dean,* to interpret "legal relief" to include punitive damage awards when punitive sanctions were already addressed by the liquidated damages provision. In the FLSA, on the other hand, awards of liquidated damages do not cover the punitive component.

The problem with plaintiff's theory is that even though liquidated damages are not punitive in the FLSA, there is an entire statutory provision, section 216(a), that does cover punitive sanctions. The same willfulness requirement included in the ADEA for awards of liquidated damages was included in the FLSA as a requirement for the imposition of criminal penalties. Congress did not "leave out" punitive sanctions in the FLSA; it merely addressed them in a different manner.[16]

---

[16]Our conclusion that the criminal penalties provided in section 216(a) are meant to cover the field of punitive sanctions in the FLSA is bolstered by the fact that Congress incorporated many of the provisions of the FLSA into the ADEA, but specifically omitted the FLSA's criminal penalties section in favor of a willfulness requirement for awards of liquidated damages. In *Thurston,* the Supreme Court discussed this drafting decision:

> The original [ADEA] bill proposed by the administration incorporated § 16(a) of the FLSA, which imposes criminal liability for a willful violation. *See* 113 Cong. Rec. 2199 (1967). Senator Javits found "certain serious defects" in the administration bill. He stated that "difficult problems of proof ... would arise under a criminal provision," and that the employer's invocation of the Fifth Amendment might impede investigation, conciliation, and enforcement. *Id.,* at 7076. Therefore, he proposed that "the [FLSA's] criminal penalty in cases of willful violation ... [be] eliminated and a double damage liability substituted." *Ibid.* Senator Javits argued that his proposed amendment would "furnish an effective deterrent to willful violations [of the ADEA]," *ibid.,* and it was incorporated into the ADEA with only minor modification, S. 788, 90th Cong., 1st Sess. (1967).

*Thurston,* 469 U.S. at 125-26, 105 S.Ct. at 624. If the liquidated damages provision of the ADEA was meant to be a substitute for the FLSA's criminal penalties section, and liquidated damages were

15

IV.

We are cognizant of the Supreme Court's direction that the FLSA is "remedial and humanitarian in purpose," and that it "must not be interpreted ... in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944). "By giving a broad construction to the anti-retaliation provision ... its purpose will be further promoted." *EEOC v. White & Son Enterprises,* 881 F.2d 1006, 1011 (11th Cir.1989); *see also Mitchell,* 361 U.S. at 292, 80 S.Ct. at 335. There is a wide difference, however, between interpreting the FLSA in a "narrow, grudging manner," and interpreting it in a way that is faithful to the congressional design. Inferring remedies that Congress never contemplated both disturbs the constitutional balance by arrogating law-making power to the judiciary, and also allows legislators to escape their responsibility by enlisting judges as supplemental draftsmen. Where Congress has set out a clear scheme to remedy violations of a federal right, as we think it did in the FLSA, our task is limited to carrying out the congressional command.

For the foregoing reasons, we AFFIRM the district court's grant of defendants' motion for judgment as a matter of law on the issue of punitive damages.

AFFIRMED.

CARNES, Circuit Judge, specially concurring:

I agree with the Court's conclusion that the Fair Labor Standards Act does not provide for the recovery of punitive damages, and I agree with most of the reasoning the majority opinion uses to reach that conclusion. The part I disagree with is the proposition that Congress' provision for criminal penalties, *see* 29 U.S.C. § 216(a), indicates an intent to exclude punitive damages. Tellingly, the majority opinion cites no authority for that counter-intuitive proposition. The provision of criminal penalties means Congress thought compliance with the statute sufficiently important that wilful violation of it should subject the culprit to the possibility of criminal prosecution and penalties upon conviction. That hardly forecloses punitive damages.

---

the "effective deterrent to willful violations" of the ADEA, then the criminal penalties provision of the FLSA is, similarly, Congress' primary method of addressing punitive sanctions in the FLSA.

16

The majority opinion says that the enforcement of the criminal provision of the FLSA is "discretionary," but it is no more discretionary than any other criminal provision of any other statute. What section 216(a) provides is:

> Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.

Where is the discretion in that? The majority also points out that no person may be punished under § 216(a) unless the government proves guilt beyond a reasonable doubt. But that is true of any criminal provision in any statute.

The part of the majority opinion that relies upon the existence of a criminal penalty in the FLSA to negate punitive damages rests upon this proposition: Whenever Congress decides that a statute's provisions are sufficiently important to warrant reinforcing compensatory remedies with a criminal sanction, we should infer Congress intended that punitive damages not be available. I disagree with that proposition. For the other reasons discussed in the majority opinion, however, I agree with the Court's conclusion that Congress did not intend for punitive damages to be available for violations of the FLSA.