[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11487
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:07-cv-00186-RDP

ANNIE HOWELL,

Plaintiff - Appellee,

versus

COMPASS GROUP,

Defendant,

MORRISON MANAGEMENT SPECIALISTS, INC.,

Defendant - Appellant.

_____

No. 10-11686
_____

D.C. Docket No. 4:07-cv-00186-RDP

ANNIE HOWELL,

Plaintiff - Appellant,

versus

COMPASS GROUP,

Defendant,

MORRISON MANAGEMENT SPECIALISTS, INC.,

Defendant - Appellee.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(November 22, 2011)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and SANDS,[*] District Judge.

PER CURIAM:

Annie Howell filed a lawsuit against her employer, Morrison Management Specialists, Inc., claiming that Morrison discriminated against her based on her race, which is African-American, and her age, which was fifty-four at that time. Howell also claimed that Morrison retaliated against her after she filed a charge with the Equal Employment Opportunity Commission. She alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et

_____

[*]Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia, sitting by designation.

2

seq.; and Alabama state law.

The district court granted summary judgment in favor of Morrison on Howell's age and race discrimination claims. Her retaliation claim, however, went to trial and the jury returned a verdict in her favor. The jury awarded Howell $50,000 in compensatory damages, and the district court entered judgment on the verdict. Morrison appeals that judgment, contending it should have been awarded judgment as a matter of law or a new trial. It also challenges an evidentiary ruling.

Howell cross-appeals the district court's decision granting summary judgment against her on the discrimination claims and its judgment as a matter of law against her on punitive damages. We will address the parties' contentions in the order of the proceedings in the district court, beginning with Howell's arguments about why the district court should have denied summary judgment on her discrimination claims.[1]

I.

Howell contends that the district court erred by granting summary judgment in favor of Morrison on her age and race discrimination claims. The court

---

[1]In the statement of issues section of her brief to this Court, Howell asserts that she is also challenging the district court's grant of summary judgment on her claims based on state law, but she makes no argument about those claims, so they are waived. See United States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006) ("We may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief. Without such argument the issue is deemed waived.").

concluded that Howell could not establish a prima facie case of discrimination based on Morrison's decision in 2006 to promote a younger, white employee to an Assistant Director position because Howell never applied for that position. "We review de novo a district court's grant of summary judgment, applying the same legal standards as the district court." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1263–64 (11th Cir. 2010).

To establish her discriminatory failure to promote claims, Howell had to show that she applied for the 2006 Assistant Director job opening. She did not. As the district court recognized, Howell gave some conflicting testimony about whether she knew that the 2006 job opening was posted on the internet, but there is no dispute that Morrison posted jobs on the internet, the person who got the 2006 Assistant Director position applied for that job on the internet, and Howell did not apply on the internet for it.[2] Howell did apply online for a 2007 Assistant Director job opening and did not get that promotion, but that is the subject of a separate lawsuit Howell has brought against Morrison.

We have explained that for a Title VII employment discrimination claim:

---

[2] One of Howell's own exhibits from trial, a job description for the Assistant Director position, shows that the job was posted on the internet in 2006. The bottom of the printed copy shows the web address and a date of 4/5/2006. There is an image of a box that appears to be something website users can click that says "Apply Now."

In order to establish a prima facie case, and thus raise an inference of discriminatory intent, the plaintiff must demonstrate only that: (i) he or she belonged to a protected class; (ii) he or she was qualified for <u>and applied for a position</u> that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class.

<u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 768 (11th Cir. 2005) (citation and footnote omitted; emphasis added). We have qualified the application requirement with an exception: "[W]here an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post." <u>Id.</u> Here, however, Morrison used the internet to formally announce the 2006 Assistant Director position.[3] Howell testified repeatedly in her deposition that Morrison posted jobs on the internet. She also testified that she knew how access the job postings through Morrison's website. The person who was awarded the job, Tanya Williamson, applied for it online.

Howell argues that she was not told the job was posted on the internet and that Williamson was told about it, but postings on the internet are available for

_____

[3] Before Morrison sought to fill the 2006 Assistant Director position, Howell mentioned to her former and present supervisors and to the Regional Director that she was interested in that job, but when it became available and was posted online, she did not apply. Not only that, but in her 2006 evaluation in answer to the question, "Does your current job satisfy your aspirations?," she answered: "Yes."

5

anyone to see, and Howell admits that she had access to the internet postings. Howell asserts in her brief to this Court that the "secret posting" on the internet "deviated from the normal procedure of posting all jobs at the time clock," but Howell testified in her deposition that "they never have posted jobs in the department, on the bulletin board where people can—the associates can view them and apply for them. . . . . Never."

Howell could have—but did not—access the 2006 Assistant Director job opening when it was posted to the internet. She also could have—but did not—apply for the job. The fact that Howell did not get a job for which she did not apply is not evidence of discrimination. The district court did not err by granting summary judgment in favor of Morrison on Howell's Title VII race discrimination claim.

As for her ADEA age discrimination claim based on failure to promote, Howell had to show the following: (1) she was a member of a protected age group; (2) she was subject to adverse employment action; (3) a substantially younger person filled the position that she was seeking; and (4) she was qualified to do the job for which she was rejected. See Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs, 162 F.3d 653, 656–57 (11th Cir. 1998). For the same reasons that she could not establish a genuine issue of material fact on her Title VII claim, her

6

ADEA claim also fails. Because Howell did not apply for the 2006 Assistant Manager position, she cannot establish that her employer discriminated against her by not hiring her for it. The district court did not err by granting summary judgment in favor of Morrison on Howell's ADEA claim.

## II.

About Howell's retaliation claim, which went to trial and resulted in judgment in her favor, Morrison contends that the district court erred by denying its motion for judgment as a matter of law and its motion for a new trial. To make a prima facie showing of retaliation under Title VII, the plaintiff must show: (1) that she engaged in statutorily protected conduct; (2) that she suffered a materially adverse action that might have dissuaded a reasonable worker from making a charge of discrimination; and (3) that there is some causal relationship between the two events. See Alvarez, 610 F.3d at 1268; see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006). Morrison argues that Howell failed to show a materially adverse action.

We review de novo the district court's denial of a motion for a renewed judgment as a matter of law. Etienne v. Inter-Cnty. Sec. Corp., 173 F.3d 1372, 1374 (11th Cir. 1999). "If the facts and inferences overwhelmingly favor one party, such that reasonable people could only arrive at one verdict, then the motion

should have been granted." Id.; see also Myers v. TooJay's Mgmt. Corp., 640 F.3d 1278, 1287 (11th Cir. 2011) ("[A] motion for judgment as a matter of law may be granted only if after examining all evidence in a light most favorable to the non-moving party we determine there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." (quotation marks omitted)). As for credibility determinations, "[i]t is the jury's task—not ours—to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1154–55 (11th Cir. 2002) (quotation marks omitted); see also Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000))). We review for abuse of discretion the district court's denial of a motion for a new trial. Brochu, 304 F.3d at 1155.

Morrison asserts that, as a matter of law, putting Howell on a "Performance Improvement Plan" was not a materially adverse action. It argues that Howell testified only about how the Performance Improvement Plan made her subjectively feel, which is not enough to show a materially adverse action that could dissuade a reasonable employee from making a charge of discrimination.

8

Howell unequivocally testified that she was singled out for the Performance Improvement Plan, and she considered it to be a disciplinary action taken against her, and it made her want to retire because she was so embarrassed about it:

Q. Did you know of any other manager that was placed on a performance plan?

A. No, ma'am. I was the only one.

Q. Did you consider the performance plan a disciplinary action?

A. Yes, ma'am, I did.

Q. Why?

A. Because I was the only one that [the Director of Food Services] put on there. I was the only one that had [a] set time schedule. I was the only one that he treated the way he treated me. I was the only one that didn't have a computer to work with.

*  *  *

A. . . . After I was put on the performance improvement plan, I wanted to retire.

Q. And why?

A. Because it was just too embarrass[ing] to know that my 37 years, that I had to be put on—I was just embarrassed. And I wanted to get out of there.

As for what constitutes a materially adverse action, the district court correctly instructed the jury on the Burlington reasonable employee standard as follows:

9

Under the law applicable to this case, an adverse employment action is any action which is materially adverse to an employee such that it could dissuade a reasonable employee from making a charge of discrimination. Whether a particular action is materially adverse is to be judged from the perspective of a reasonable employee in the plaintiff's position considering all of the circumstances.

The jury was also instructed that whether an action is materially adverse was a question of fact for it to decide and that it could consider several possible actions to determine if any of them were materially adverse:

You will have a form of verdict with you that is a series of questions, and it in effect follows the pattern of what I have just discussed with you. The first question is this: "Do you find that the plaintiff proved by a preponderance of the evidence that the defendant committed any adverse employment actions against the plaintiff"; that is, an adverse employment action as I discussed it and, as I indicated, these possibilities for you to consider: whether the performance improvement plan was an adverse action, whether there was an adverse action resulting from some employment environment change, whether there was a downgrade of a performance evaluation based on retaliation, or whether there was failure to give a raise of a greater amount. Those are the areas that you can consider.

Morrison did not object to those instructions.

During deliberations the jury asked, "Can you tell us what the adverse actions were?" The court referred the jury to the instructions. In its verdict the jury specified that it had found these adverse actions:

(1) the Performance Improvement Plan was isolated just the plaintiff as disciplinary action; (2) Associate Performance Appraisal lowered from 3.8 to 1.9 after an EEOC charge; (3) Plaintiff unpromotable due

10

to disciplinary action by company (Jan. 07) email.[4]

We presume that juries follow their instructions.  United States v. Townsend, 630 F.3d 1003, 1013–14 (11th Cir. 2011).  Thus, we presume that the jury applied the Burlington reasonable employee standard to the evidence and decided that a reasonable employee would be dissuaded from making a charge of discrimination based on the implementation of the Performance Improvement Plan under the facts of this case.  The jury was free to find that the Performance Improvement Plan amounted to a disciplinary action even though Morrison's witnesses testified that it did not.  It is the jury's job, not ours, to make credibility determinations.  Brochu, 304 F.3d at 1154–55.

Because that finding was enough to support the jury's conclusion that an adverse action was taken against Howell, we need not address the other two findings about the "Associate Performance Appraisal" and the "(Jan. 07) email."  The district court instructed the jury that "whether the performance improvement plan was an adverse action" was one from among several possible adverse actions that it could consider.  The court asked the jury whether it found "that the plaintiff

---

[4] Although the third finding is ambiguous, it appears from the parties' representations at oral argument and this Court's review of the record that the jury's finding was based on copies of two e-mail messages dated January 2007 that were used at trial to refresh a witness' recollection but were not admitted into evidence.

11

proved by a preponderance of the evidence that the defendant committed <u>any</u> adverse employment actions against the plaintiff," and it listed several "possibilities" for the jury to "consider." (emphasis added.) As we have already mentioned, Morrison did not object to those instructions.

Because the jury found that the Performance Improvement Plan was "isolated" and was directed at Howell alone as a "disciplinary action," we cannot say that viewing "all evidence in a light most favorable to [Howell] . . . there is no legally sufficient evidentiary basis for a reasonable jury to find" for her on her retaliation claim. <u>Myers</u>, 640 F.3d at 1287 (quotation marks omitted). The facts and inferences do not so overwhelmingly favor Morrison that the only verdict reasonable people could reach was one for Morrison based on the materially adverse action issue. <u>See</u> <u>Etienne</u>, 173 F.3d at 1374. The district court did not err by denying Morrison's motion for judgment as a matter of law, and for the same reasons, it did not abuse its discretion by denying Morrison's motion in the alternative for a new trial.

III.

Morrison also contends that the district court erred by allowing testimony about facts related to another lawsuit Howell brought against it based on Morrison's decision not to promote her to the Assistant Director position that

12

became available in 2007.  This issue involves testimony about a conversation Howell allegedly had with Rob Cooperman, a recruiter for Morrison, when she was applying for the Assistant Director position in 2007.

This was Howell's testimony about that conversation on cross-examination:

A.  See, I misunderstood Mr. Cooperman when he asked me, "Have you had a write-up in the last six months?"  I said yes.  And then I had to go back and say, "Mr. Cooperman, I'm sorry.  I meant I haven't had one—it's been over a year.  I haven't had one."  He said, "Well, I'm sorry.  You just messed yourself up."

Q.  [Counsel for Morrison] But you told him that you hadn't been written up in six months?

A.  I made a mistake, and I told him that, too.

*       *       *

Q.  That you had not been written up within the six months of January of '07.

A.  Yes, ma'am.

Howell's retaliation claim based on not receiving the 2007 promotion is the subject of a separate lawsuit.  Morrison argues that the evidence about it influenced the jury to find that Howell was "unpromotable" as a result of the company's disciplinary actions, which was the third specific adverse action the jury found.

We review evidentiary rulings for abuse of discretion and reverse for a new

13

trial only where there is substantial prejudice.  Brochu, 304 F.3d at 1155.  For the reasons we have already discussed, the jury's finding about the Performance Improvement Plan, which was implemented in 2006, was enough to support its conclusion that there was an adverse action taken against Howell that would have dissuaded a reasonable employee from making a charge of discrimination.  Thus, any additional finding the jury made about Howell being "unpromotable" in 2007 did not substantially prejudice Morrison.

IV.

Finally, Howell contends that the district court erred by granting judgment as a matter of law to Morrison on her punitive damages claim.  Applying Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317 (11th Cir. 1999), the district court determined that the Director of Food Services, Andy Carmichael, was not high enough up the corporate ladder to impute liability for his actions to the company.  Howell argues that our Dudley decision is no longer good law after the Supreme Court issued Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S. Ct. 2118 (1999).

We review de novo a district court's ruling on a motion for judgment as a matter of law on the issue of punitive damages.  See Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1275 (11th Cir. 2008); see also Snapp v. Unlimited Concepts,

Inc., 208 F.3d 928, 932 (11th Cir. 2000) ("We review the district court's grant of defendants' motion for judgment as a matter of law on the issue of punitive damages de novo.").

In Dudley we held that a Wal-Mart store manager and a co-manager were not high up enough in the "corporate management hierarchy" to justify imputing liability to the corporate employer for punitive damages based on the manager's racial discrimination against an employee. See 166 F.3d at 1323. We reasoned that Wal-Mart was a "giant business" with "more than 2,000 stores." Id. Although the evidence supported the jury's finding that the store manager and the co-manager had abused the authority Wal-Mart had delegated to them by discriminating against the plaintiff on the basis of race, their acts did not impute liability to Wal-Mart for punitive damages because they were too low in the corporate hierarchy. Id.

About four months after this Court issued the Dudley decision, the Supreme Court held in Kolstad that for Title VII cases, "Punitive damages are limited . . . to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Kolstad, 527 U.S. at 529–30, 119 S.Ct at 2122 (citing 42 U.S.C. § 1981a(b)(1)). The Court rejected a standard that had applied in

15

our Dudley decision—the "egregious" conduct standard. See id. at 546, 119 S.Ct. at 2129 ("[A]n employer's conduct need not be independently 'egregious' to satisfy § 1981a's requirements for a punitive damages award, although evidence of egregious misconduct may be used to meet the plaintiff's burden of proof.").

Even after Kolstad, however, the high-enough-up-the-ladder rule for punitive damages set forth in Dudley is still binding precedent. More than two years after Kolstad was issued, this Court reiterated the Dudley punitive damages rule.[5] See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1279–80 (11th Cir. 2002). In Miller we first applied Dudley to determine whether the employer had constructive knowledge of a hostile work environment that would justify imputing liability for compensatory damages, and we concluded that it did have that knowledge. See Miller, 277 F.3d at 1279–80. We held that the service manager of the tractor-trailer dealership, who in the company hierarchy was separated from the owner and president by only one person, was high enough on the corporate ladder that his notice of the hostile work environment served as notice to the company. Id. at 1279. For that reason, liability was imputed to the company for

---

[5] We also note that Kolstad cited Dudley with approval for its use of the common law rule that agency principles limit vicarious liability for punitive damages awards against employers. Kolstad, 527 U.S. at 541, 119 S. Ct. at 2127 ("This is a principle . . . that this Court historically has endorsed.").

16

compensatory damages on the plaintiff's hostile work environment claim.  See id.

In the Miller decision we also applied Dudley on the issue of punitive

damages, reiterating the Dudley holding:

> We have held that "punitive damages will ordinarily not be assessed
> against employers with only constructive knowledge" of harassment;
> rather, punitive damages may only be considered in cases where the
> "discriminating employee was high[ ] up the corporate hierarchy" or
> where "higher management countenanced or approved [his]
> behavior."

Miller, 277 F.3d at 1280 (quoting Dudley, 166 F.3d at 1323).  We held in Miller

that there was not enough "evidence on the record to support the necessary finding

of malice or reckless indifference by [the corporate employer] for the federal rights

of [the plaintiff] to justify the award of punitive damages."  Id.

In light of Miller which, as we have mentioned, was decided after Kolstad,

Dudley's high-enough-up-the-ladder or "corporate hierarchy" requirement for an

award of punitive damages against a corporate employer is still good law and still

binds this Court.  See Miller, 277 F.3d at 1280.  Kolstad only did away with the

egregiousness requirement for punitive damages.  See 527 U.S. at 546, 119 S. Ct.

at 2129.

Recognizing that Miller was decided after Kolstad, the district court

correctly applied Dudley to the undisputed facts of this case and concluded, as a

matter of law, that Carmichael was not high enough up the corporate ladder for punitive damages to be awarded against Morrison. Gina Paige, who worked in human resources for Compass Group (Morrison's parent company), testified that the Compass Group purchased Morrison in 1997 or 1998. Compass has about 144,000 employees in the United States, union and non-union, and 366,000 internationally. Morrison has about 20,000 employees. There is a Director of Dining Services in each Morrison Facility and there are 400 or more facilities in the United States. Carmichael was one of about 400 directors in the Morrison hierarchy.

Furthermore, Howell admitted that Morrison had policies prohibiting discrimination and harassment. She understood that she had avenues for complaints, although she did not use them, and she does not contend that any managerial employee other than Carmichael retaliated against her. Cf. Miller, 277 F.3d at 1280 ("[E]mployers may assert a good faith defense to vicarious liability for punitive damages where the 'employment decisions of managerial agents . . . are contrary to the employer's 'good-faith efforts to comply with Title VII.'" (quoting Kolstad, 527 U.S. at 545, 119 S.Ct. at 2129)). Howell failed to show that Carmichael was high enough up the corporate ladder to impute liability to Morrison or that Morrison acted with the malice or reckless indifference for

Howell's federal rights necessary to justify an award of punitive damages.

V.

For the foregoing reasons, the judgment of the district court is, in all respects,

**AFFIRMED.**